## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

WILLIE EUGENE                )
WILLIAMSON,                  )
                             )
    Plaintiff,         )
                             )
v.                           )       Case No. CIV-23-655-SM
                             )
MARTIN O'MALLEY,             )
Commissioner of Social       )
Security,[1]                 )
                             )
    Defendant.         )

## MEMORANDUM OPINION AND ORDER

Willie Eugene Williamson (Plaintiff) seeks judicial review of the Commissioner of Social Security's final decision that he was not "disabled" under the Social Security Act. *See* 42 U.S.C. § 405(g). The parties have consented to the undersigned for proceedings consistent with 28 U.S.C. § 636(c). Docs. 12, 13.

Plaintiff asks this Court to reverse the Commissioner's decision and remand the case for further proceedings because the Administrative Law Judge (ALJ) improperly evaluated two medical opinions, erroneously omitted Plaintiff's need for a cane, and improperly rejected his subjective testimony.

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023, and is therefore substituted as Defendant in this suit. *See* Fed. R. Civ. P. 25(d).

Doc. 17, at 8-20. After a careful review of the administrative record (AR), the parties' briefs, and the relevant authority, the Court affirms the Commissioner's decision. *See* 42 U.S.C. § 405(g).[2]

## I.     Administrative determination.

### A.     Disability standard.

The Social Security Act defines a disabled individual as a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B.     Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of making "a prima facie showing that he can no longer engage in his prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that

---

[2]     Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the AR will refer to its original pagination.

2

prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

### C. Relevant findings.

#### 1. ALJ's findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 19-28; *see* 20 C.F.R. § 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found Plaintiff:

(1)    had not engaged in substantial gainful activity since June 4, 2021, the application date;

(2)    had the severe impairments of tinea pedis, ankle dysfunction, hypertension, heart failure, and epilepsy;

(3)    had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4)    had the residential functional capacity[3] (RFC) to perform medium-exertion work, with the following limitations: he can never climb ladders or stairs and he can have no exposure to unprotected heights or dangerous machinery;

(5)    could perform his past relevant work as a machine operator conveyor monitor (DICOT 921.685-026);

---

[3]    Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

(6)    could perform jobs that exist in significant numbers in the national economy such as linen clerk (DICOT 222.387-030) and hand packager (DICOT 920.587-018); and so,

(7)    had not been under a disability since June 4, 2021, the application date.

*See* AR 19-28.

### 2.    Appeals Council's findings.

The Social Security Administration's Appeals Council denied Plaintiff's request for review, *id.* at 1-6, "making the ALJ's decision the Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II.    Judicial review.

### A.    Review standard.

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938))). The Court "remain[s] mindful that '[e]vidence is not substantial if it

is overwhelmed by other evidence in the record.'" *Wall*, 561 F.3d at 1052 (alteration in original) (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005)).

This Court "consider[s] whether the ALJ followed the 'specific rules of law that must be followed in weighing particular types of evidence in disability cases,' but we will not reweigh the evidence or substitute our judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"[T]he failure to apply proper legal standards may, under the appropriate circumstances, be sufficient grounds for reversal independent of the substantial evidence analysis." *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). But the failure to apply the proper legal standard requires reversal only where the error was harmful. *Cf. Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (placing the burden to show harmful error on the party challenging an agency's determination).

**B.     Substantial evidence supports the ALJ's RFC assessment.**

**1.     The Thompson opinion.**

Plaintiff first challenges the ALJ's assessment of medical consultative examiner Sarah Thompson, P.A.-C.'s October 2021 opinion. Her assessment concluded:

> *1. left foot pain - [] secondary to arthritis in ankles and foot. He has preserved ROM and no foot deformities. When asked if he can ambulate w/o cane, he is able to walk from the door to the chair in exam room.*
>
> *2. arthritis b/l ankles - no issues with ROM and see gait as below. Pt reports pain that is achy and dull and increased pain with prolonged standing.*
>
> *3. Gait disturbances - safety is slightly impaired as the claimant ambulates slowly and cautiously and could likely not make a quick move. He was able to ambulate w/o the cane in exam room when asked but was even more slow and cautious. He states the cane was not prescribed but that it has helped him. He denies any falls.*
>
> 4. HTN- slightly elevated in exam today. Instructed him to follow up with PCP and monitor trends at home.
>
> 5. Nicotine addiction - needs cessation for overall health and well-being.
>
> 6. Decreased vision - vast improvement noted with corrective lenses.
>
> 7. Seizure disorder - continues to have grand-mal seizures on medications. He states his last seizure was 5 months ago but that he has 1-2 seizures per month on average. He is on two anti-elliptic medications. Please see seizure form for further details.

AR 338 (emphasis added).

The ALJ found her opinion "not persuasive." *Id.* at 25. He determined that

> [l]imitations were generally vague, primarily consisting of his safety being 'slightly impaired' with respect to gait disturbances. While it is supported by observed slow and cautious gait, insofar as it indicates more significant limitations in activity, including need for a cane, it is inconsistent with the lack of notable findings on imaging and general unremarkable signs on other limitations.

*Id.* The ALJ's reference to imaging refers to a November 22, 2021 x-ray showing no fracture or dislocation, maintained articular margins and joint spaces, unremarkable soft tissues, and noting "[n]o acute abnormality." *Id.* at 344. He also referred to the medical records from June 2021 through July 2022, which reflected no musculoskeletal issues or medical visits involving ambulation issues. *Id.* at 25, 377-487.

Plaintiff argues that the ALJ did not consider Dr. George Stanford Law's notation that he was using a cane during a February 14, 2022 appointment. Doc. 17, at 15. And that the ALJ ignored Plaintiff's statement that he was no longer working as a pallet sorter because he was "too slow" and unable to "keep up." *Id.*

While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," *Clifton v. Chater*, 79

F.3d 1007, 1009-10 (10th Cir. 1996), and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position," *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quoting *Smith v. Heckler*, 707 F.2d 1284, 1285 (11th Cir. 1983)).

The ALJ mentioned that Plaintiff brought a cane to a pre-surgical urology appointment in February 2022 with Dr. Law. AR 24. The ALJ also noted Plaintiff complained of "heavy/weak legs." *Id.* (quoting *id.* at 431). This does not detract from the substantial evidence supporting the RFC assessment. The ALJ noted that not only did Plaintiff *not* consistently highlight joint problems but he also found Plaintiff "has required a cane" and noted his allegations of joint problems and foot pain, limiting his ability to walk and stand. *Id.* at 23. The ALJ also observed that Plaintiff has not consistently presented with a cane and does not have a prescription for one. *Id.* at 22. The ALJ also acknowledged Plaintiff's subjective complaints before P.A.-C. Thompson about his ability to walk and stand and his slow pace. *Id.* at 24-25. Finally, the ALJ considered the entire record in crafting the RFC assessment,

and the Court takes the ALJ's word here. *Id.* at 22; *Wall*, 561 F.3d at 1070 ("Where, as here, the ALJ indicates he has considered all the evidence our practice is to take the ALJ at his word.").

## 2.    The Ciali opinion.

Next, Plaintiff challenges the ALJ's consideration of psychological consultative examiner Peter Ciali, Ph.D.'s opinion. Dr. Ciali concluded:

> It is this examiner's opinion Mr. Williamson is not capable to independently manage his financial affairs in his own best interest secondary to his active substance use disorder. Mr. Williamson prognosis for improvement is fair with treatment. *His ability to perform work related mental activities for sustained periods of times is mildly to moderately impaired including understanding complex directions and remembering instructions. Mr. Williamson's symptoms of anxiety result in mild impairments in his ability to socially interact and adapt.*

AR 350 (emphasis added).

The ALJ found Dr. Ciali's opinion to be "partly persuasive." *Id.* at 25. He noted that

> only mild limitation in social and adaptive functioning are supported by generally appropriate demeanor. It is consistent with later report of depression but lack of significant symptoms or signs throughout the overall record. Further limitations in sustaining activity, however, is only supported by findings on the examination and are inconsistent with other examinations, including the independent medical consultative examination.

*Id.* at 25.

9

In considering Plaintiff's mental limitations, the ALJ observed Plaintiff's chief complaint involved physical—not mental—limitations. *Id.* at 20. He reviewed Plaintiff's mental health history, noting it was "limited for notable symptoms or signs." *Id.* The ALJ acknowledged Plaintiff's report of depression after the deaths of his son and nephew, that he received medication, and that no further care was recommended. *Id.* at 21. The ALJ found Plaintiff's mental impairments nonsevere. *Id.*

Plaintiff argues "the ALJ should have adopted [the] part" of Dr. Ciali's mental limitations about understanding complex directions and remembering instructions because they were fully supported by his examination. Doc. 17, at 17; Doc. 22, at 2-3. But the ALJ found Dr. Ciali's opinion partly persuasive and explained why. AR 25.

When formulating a claimant's RFC, the ALJ must consider all of a claimant's impairments—both severe and non-severe—singly and in combination. *See, e.g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]t step two, the ALJ must consider the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity to survive step two." (alternations omitted) (quoting *Langley v. Barnhart*, 373 F.3d 1116, 1123-24 (10th Cir. 2004))); *see also Hill v. Astrue*, 289 F. App'x 289, 292 (10th Cir. 2008)

10

("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'"). The ALJ did so here, and Plaintiff "bears the burden of establishing a disability." *Turner*, 754 F.2d at 328; *see Zavala v. Kijakazi*, No. CIV-20-1139-STE, 2021 WL 6051107, at *4 (W.D. Okla. Dec. 21, 2021) ("[E]ven when an ALJ disregards nonsevere impairments when assessing a claimant's RFC, such an error does not necessarily warrant remand if the evidence in the case does not support a finding of functional limitations from the non-severe impairments." (citing *Alvey v. Colvin*, 536 F. App'x 792, 794 (10th Cir. 2013))). Plaintiff has not met his burden.

In assessing the "paragraph B" broad functional areas of mental functioning, the ALJ found mild limitations in each of the "paragraph B" criteria. AR 21-22. The ALJ reviewed Plaintiff's mental health treatment and history and rejected the need for restrictions for "sustaining activity." *Id.* at 25.

Finally, there is no need for ALJ's to explicitly incorporate mild or moderate mental limitations found at steps two and three into the RFC assessment. *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015) (a "finding of a moderate limitation . . . at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment"); *Suttles*

*v. Colvin*, 543 F. App'x 824, 826-27 (10th Cir. 2013) (holding that the ALJ's finding of a mild limitation at step two "[did] not apply at later steps").

The Court finds that substantial evidence supports the ALJ's RFC assessment.

### C.    The ALJ committed no error in rejecting Plaintiff's alleged need for a cane.

Plaintiff maintains that the ALJ gave no legitimate reason to reject his medical need for a cane.

Social Security Ruling 96-9p sets forth the relevant standard in determining whether to accommodate a medically necessary hand-held assistive device. *See* SSR 96-9p, 1996 WL 374185 (July 2, 1996). The Ruling states, in relevant part:

> Medically required hand-held assistive device: To find that a hand-held assistive device is medically required, *there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed* (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

*Id.* at *7 (emphasis added).

12

"The standard described in SSR 96-9p does not require that the claimant have a prescription for the assistive device in order for that device to be medically relevant to the calculation of her RFC. Instead, he only needs to present medical documentation establishing the need for the device." *Staples v. Astrue*, 329 F. App'x 189, 191-92 (10th Cir. 2009).

The ALJ recounted Plaintiff's cane use, noting he presented with a cane to P.A.-C. Thompson, he stated that he needed a cane, he could walk slowly and weakly with the cane, but he walked more slowly and cautiously without the cane. AR 24. The ALJ also noted Plaintiff used a cane during a pre-surgery urology evaluation with Dr. Law in February 2022. *Id.* (citing *id.* at 431).

The ALJ found that Plaintiff "has been generally managed conservatively for his cardiovascular impairments and epilepsy, with limited care for joint problems." *Id.* And so, he concluded that "[a] cane or other assistive device is particularly not found to be medically necessary in accordance with SSR 96-9p." *Id.* The ALJ added that neither was the cane prescribed nor did Plaintiff use it or another "device at multiple other examinations." *Id.* at 24-25. He also reviewed the objective medical history, noting a lack of more significant joint problems. *Id.* at 23-25. Plaintiff testified about his inability to carry a gallon of milk across a room and that he could not stand for more than five minutes. *Id.* at 43-44. He also testified about his sharp

ankle pain and his need for naps "[a]ll the time" throughout the day. *Id.* at 44-45. But the ALJ discounted Plaintiff's credibility. *Infra* § II.D.

Plaintiff bears the burden of proving that he had functional limitations that should be part of his RFC. *See* 20 C.F.R. § 416.912(a). P.A.-C. Thompson's statements about Plaintiff's use of a cane do not provide sufficient evidence of medical need for a cane. *See Staples*, 329 F. App'x at 192 (finding a doctor's statement that the plaintiff "still uses a cane to walk" was insufficient medical documentation to support a finding of medical necessity). The ALJ adequately addressed Plaintiff's cane use and was not required to consider the use of a cane in the RFC.

Finally, for Plaintiff's past relevant work as a conveyor monitor, although it includes occasional climbing, it requires no balancing, stooping, kneeling, crouching, or crawling. DICOT 921.685-026, 1991 WL 688083. Similarly, for the linen clerk job the vocational expert identified, only occasional stooping would be present. DICOT 222.387-030, 1991 WL 672098. And for the hand packager job, only occasional balancing would be present. DICOT 920.587-018, 1991 WL 687916. Plaintiff makes no focused argument about these jobs or such requirements.

14

### D. The ALJ properly considered Plaintiff's subjective testimony.

Plaintiff challenges the ALJ's reasoning for rejecting his subjective testimony. He points to his function report, which showed sore and aching feet and toes. Doc. 17, at 22. He points to other medical records showing his mobility problems and underscores his testimony about his inability to walk far with a gallon of milk. *Id.* He also argues he cannot stand for more than five minutes, experiences fatigue, has shortness of breath, and requires multiple daytime naps. *Id.* at 22-23. He suggests the ALJ mischaracterized his recent falls because the ALJ only considered recent falls with a cane. *Id.* at 23; *cf.* Doc. 22, at 3.

In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of his symptoms are consistent with the objective medical evidence and other evidence of record. SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017). If they are consistent, then the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." *Id.* at *8. If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id.* Factors the ALJ should

15

consider in determining whether a claimant's pain is in fact disabling include: the claimant's attempts to find relief and "willingness to try any treatment prescribed [; . . . the claimant's] regular contact with a doctor[;] the possibility that psychological disorders combine with physical problems[;] the claimant's daily activities[;] and the dosage, effectiveness, and side effects of [the claimant's] medication." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (quoting *Luna v. Bowen,* 834 F.2d 161, 165-66 (10th Cir. 1987)); *see also* SSR 16-3p, 2017 WL 5180304, at *7-10 (listing similar factors); 20 C.F.R. § 416.929(c)(3) (also listing similar factors).

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). As long as the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a 'formalistic factor-by-factor recitation of the evidence.'" *Keyes-Zachary*, 695 F.3d at 1167 (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id.*

The ALJ discounted Plaintiff's consistency, noting his statements were "not entirely consistent with the medical evidence and other evidence in the record." AR 23. The ALJ reviewed Plaintiff's urological visits, visual problems, and mental health treatment. *Id.* at 20. The ALJ then considered Plaintiff's complaints regarding joint problems and foot pain. *Id.* at 23. He noted that Plaintiff's reports about foot and ankle pain were not consistent. *Id.* at 23-24 (reviewing fungal infection treatment, toe rash treatment, and urological visit where he arrived with a cane and complained of heavy/weak legs). On review, Plaintiff denied joint pain and showed a normal range of motion during an exam where no cane was noted. *Id.* at 24. The ALJ considered Plaintiff's heart disease and hypertension and his seizure disorder treatment. *Id.*

In the end, the ALJ concluded the objective medical evidence did not support more significant limitations. *Id.* He also noted inconsistent symptoms, conservative management of his symptoms, inconsistent use of a cane, and the absence of an assistive device prescription. *Id.* at 24-25. The ALJ did not have to impose any greater limitations in the RFC assessment because he found the record did not support those limitations.

This Court will not reweigh the evidence and therefore finds no error in the ALJ's decision. *See Garrison v. Colvin*, 564 F. App'x 374, 378 (10th Cir. 2014) ("The ALJ's discussion of the evidence and his reasons for his

conclusions demonstrate that he considered all of [Plaintiff's] impairments," and the "limited scope of review precludes this court from reweighing the evidence or substituting [its] judgment for that of the Commissioner." (additional alteration omitted)).

### III.   Conclusion.

Based on the above, the Court affirms the Commissioner's decision.

**ENTERED** this 14th day of February, 2024.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE